Drake, Ch. J.,
delivered the opinion of the court:
- This is a motion to dismiss the following petition, for want of jurisdiction in the court to entertain it:
“The petition of the Great Western Insurance- Company showeth:
“ First. That the petitioner, the Great Western Insurance Company, is a corporation duly organized and established in accordance with the laws of the State of New York, and having its principal place of business in the city, county, and State of New York, and that it is duly authorized to make insurance *212 upon all matters appertaining to, or connected with, marine risks or transportation.
“ Second. That at sundry times, for a valuable consideration, said petitioner did make insurance and issue, policies upon various vessels, cargoes, and freights, set forth in schedule‘A’ hereto annexed and made part of this petition. Said insurance covering risks of capture or seizure, restraint or detention or the consequences of any attempt thereat, by or under the authority of the so-called Confederate States, or any one or more of the seceding or revolting States of the United States.
u Third. That the said several vessels named in said schedule ‘A’ were severally captured or destroyed by the so called Confederate privateers Alabama and Florida, by said' vessels, respectively, at the dates and times as set forth in schedu le ‘ B ’ hereto annexed and made part of this petition.
u Fourth. That the petitioner did at sundry times, and in pursuance of its contracts of insurances, as heretofore set forth, pay to citizens of the United States losses arising from the capture or destruction of said vessels, to the amount upon the said several vessels as set forth in schedule ‘A’ hereto annexed and made part of this petition, to the parties entitled thereto, and amounting in the aggregate to the sum of $309,635; that in each and every case the money so paid was paid to American citizens, and the payment in each and every case of loss set forth in said schedule was less than the value of the property captured or destroyed as heretofore alleged.
“ Fifth. That upon payment of aforesaid losses as heretofore set out each and every party to whom such payment was made assigned to the petitioner his right to recover for such capture and destruction from any and all persons and governments whatsoever. The petitioner further avers that in consequence of its payment of the losses heretofore set forth it became, independently of said assignment, subrogated to the rights of the assured in the aforesaid vessels, and thereby became entitled to demand and recover from any person or government liable for such losses full payment therefor, to the extent of its payments and interest thereon.
“ Sixth. That the kingdom of Great Britain, by the laches •of Her Britannic Majesty’s government in permitting the so-called Confederate privateers Alabama and Florida to escape from its ports, did incur obligations and become liable for the payment of the losses accruing by reason of the capture or destruction of the vessels or cargoes heretofore specified, by the aforesaid Alabama and Florida, to the owners of said vessels and cargoes and to their assigns.
“ Seventh. The petitioner made claim as aforesaid .against the government of Great Britain, and in obedience to a request from the Department of State, dated Washington, September 22,1865, requesting citizens of the United Stateshaving claims *213 against foreign governments not founded on contract to forward to said department statements of the same under oath, accompanied by proper proof, did furnish full and detailed statements, in accordance with the rules of said department, appended to said request, of its aforesaid claim against the government of Great Britaiu, and did request the said United States to present said claims against Her Britannic Majesty’s government and demand payment therefor for the benefit of the petitioner.
“Eighth. That the United States did present said claims of the petitioner, with those of many other citizens and other similar claims, to Her Britannic Majesty’s government, and together with proof thereof as furnished by your petitioner, and that the amount of said claims and of the liability of Her Britannic Majesty’s government therefor were duly considered by a tribunal of arbitration sitting at Geneva, the claims of your petitioner being presented and urged by the., duly accredited agents of the United States to said tribunal.
“ Ninth. That said tribunal did, on or about the 14th day of September, 1872, award, as its judgment and opinion, a sum in gross and the cancellation of all claims upon Great Britain considered and allowed by said tribunal, amounting to fifteen million five hundred thousand dollars ($15,500,000), the payment by Great Britain and the acceptance of said sum by the United States to be the surrender and extinguishment of all claims upon the kingdom of Great Britain and Her Britannic Majesty’s goverment for all losses growing out of the various matters which had been presented for the consideration of said tribunal, both on the part of the United States and its citizens. The petitioner avers that its claims, as heretofore set forth, were included among these claims.
“Tenth. That Her Britannic Majesty’s government and the kingdom of Great Britain acted on and accepted the judgment and report of said tribunal, and on or about the 26th day of May, 1873, appropriated the necessary money, and in September of the sume year paid over, in satisfaction and extinguishment of its liability by reason of the claims aforesaid, said sum of fifteen and one-half million dollars to the Unked States, and. the same was received by the Secretary of State of the United States, and during the fiscal year ending June 30, 1874, was invested ,iu the 5 per cent, funded loan of 1881, and a registered bond therefor was issued to the Secretary of State in trust.
“Eleventh. That prior to March 31,1877, portions of said fund had been used in payment and settlement of the claims of individuals presented by the United States as aforesaid, and included in said sum of fifteen million five hundred thousand dollars, but that on that day the balance of said bonds, amounting to nine million five hundred and fifty-three thou *214 sand eight hundred dollars ($9,553,800), including interest at 5 per cent, up to that date, were canceled and destroyed, and the value thereof covered into the Treasury of the United States, and that said amount, together with the sum of twenty-two thousand three hundred and fifty dollars and eighteen cents ($22,350.18), being a premium on the sale of bonds over and above the amount theretofore paid to other claimants, which was also at that date covered into the Treasury, constitute a fund now in the Treasury of the United States, and undistributed, for the purposes for which it was awarded and paid by Great Britain as aforesaid, of nine million five hundred and seventy-six thousand one hundred and fifty dollars and eighteen cents ($9,576,150.18), without reckoning any interest thereon since the 1st day of March, 1877. That, as your petitioner is informed and verily believes, the claim of your petitioner, presented in its behalf by the United States as aforesaid, and which were allowed as forming a part of said sum of fifteen million five hundred thousand dollars, with the interest allowed thereon, amounted in the aggregate to four hundred and seventy-one thousand four hundred and nineteen dollars and twenty-nine cents, and that by force of the payment by Her Britannic Majesty’s government, as aforesaid, to the United States, the claim of your petitioner to that amount against the Kingdom of Great Britain and her Britannic Majesty’s government was canceled and discharged, and that thenceforth the claim of the petitioner for its losses, as aforesaid, to that ■ amount, became a claim against the United States, and the United States, by reason of its presentation of said claims to the government of Great Britain, and its acceptance of said sum of fifteen million five hundred thousand dollars ($15,5t)0,-060) in cancellation and discharge of Great Britain from its liability for such claims as the United States had presented to it, thereby became the trustee of this petitioner to the extent aforesaid, and liable to pay to it said sum of four hundred and seventy-one thousand four hundred and nineteen dollars and twenty-nine cents ($471,419.29), together with such interest as it might receive upon said trust fund.
“Twelfth. That of the interest accruing upon said trust fund up to the time of its being covered into the Treasury, March 31, 1877, the proportionate share of your petitioner is seventy-five thousand five hundred and forty-six dollars and fifty-one cents ($75,546.51).
“Thirteenth. That the government of the United States refuses, and at all times has refused, to pay or to make any provision for the payment of the claims of your petitioner in the premises, either of the sum of three hundred and nine thousand and six hundred and thirty-five dolíais ($309,635), its original claim, without interest, against Her Britannic Majesty’s government, the sum of four hundred and seventy-one *215 thousand four hundred and nineteen dollars and twenty-nine ■cents ($471,419.29), being the amount as allowed, with interest, -and paid by her Britannic Majesty’s government to the United States for the use and benefit of your petitioner in September, 1873, as aforesaid, or the sum of five hundred and forty-six thousand nine hundred and sixty-five dollars and eighty cents ■■($546,965.80), the amount of said last-mentioned sum, with interest accruing thereon at 5 per cent., covered into the Treasury March 31,1877.
“ Fourteenth. That your petitioner, the Great Western Insurance Company, and each and every one of its stockholders, have at all times borne true allegiance to the government ■of the United States, and have not in any way voluntarily aided, abetted, or given encouragement to rebellion against the said government.
“ Fifteenth. The petitioner further states that there has been no assignment or transfer of its said claim, or of any part thereof, or interest therein; and that said claimant is justly ■entitled to the amount claimed from the United States, hereinafter allowing all just credits and offsets, and that it believes the facts as stated in this petition to be true.
“Sixteenth. That by reason of the premises there is justly due to your petitioner from the United States the sum of five hundred and forty-six thousand nine hundred and sixty-five dollars and eighty cents ($546,965.80), as aforesaid, withinterest from March 31, Í877.
“ Wherefore your petitioner prays judgment against the defendant for the sum of five hundred and forty-six thousand ninehundredand sixtv-five dollars and eighty cents ($546,965.80), with interest from the 31st day of March, 1877.”
We have set out the petition at large in order that its exact terms may appear in full; but the case can be substantially -stated in a few words.
The treaty of Washington, of May 8,1871, between Great ‘Britain and the United States, authorized a tribunal of arbitration, to which should be referred “ all the claims growing ■out of acts committed by the aforesaid vessels [Alabama and Florida], and generically known as the ‘Alabama claims.’ ”
Among the claims which went before that tribunal were those ■of the present claimant for losses to the amount of $309,635 paid on twenty vessels it had insured, and which had been de-' -stroyed by the Alabama and the Florida.
The tribunal of arbitration awarded nothing on any individual claim, but a gross sum of $15,500,000 to be paid to the United States “ for the satisfaction of all the claims referred *216 to the consideration of the tribunal and that sum was paid; by Great Britain to the United States.
The claimant demands payment of its losses out of that money, asserting that the United States, in presenting its claims before the tribunal of arbitration, acted as its agent, and in> receiving the amount of the award became its trustee to the-extent of the amount of its losses; and therefore that the United States have received so much money for its use and benefit.
The claimant admits that its right to demand payment of its-claim out of that money was subject to the authority of Congress to hold the money as a separate fund, set apart from alt other funds, and to subject the same to a course of administration for the purpose of applying it to the claims entitled thereto. While the money was invested in United States registered bonds, in pursuance of the Act March 3, 1873 (17 Stat. L., 601, ch. 261), and while the first Court of Commissioners of' Alabama Claims was in existence, the claimant concedes that it had no right to sue in this court; but that its right to sue-here accrued when that court ceased to be, and the bonds in which the money was invested were canceled, and so much, of the money as remained was covered into the Treasury.
The motion to dismiss presents the question whether this-court can, under the laws defining its jurisdiction, take cognizance of such an action. We have not been able to find anything to authorize it.
The petition seems to us to proceed upon an entirely erroneous and indefensible view of the relations between the government and the citizens of the United States in reference to-the matter of the claims of the latter against foreign governments.
It assumes that- when that government seeks from another-government reparation for injuries to a citizen of the United» States, it thereby becomes the agent of the citizen.
If this be true, then it necessarily follows that the government derives from the citizen the power to act as his agent, is subject to the citizen’s instructions, is liable to revocation of its. authority by the citizen, and is accountable to the citizen for-the due exercise of its agency.
When it is remembered that the national government, not only at home but over the whole earth, embodies, represents, and wields the sovereignty of the American nation, so far as author *217 ized by tbe Constitution of the United States; and that when-it speaks to or treats with another nation it does so in no character but that of a sovereign, and is not known nor would be-recognized in any other; it seems quite impossible to conceive-of there being underneath its apparent sovereignty an agency for a man or a company of men, to whom it is to look for authority and instructions, and to whom it may become auswerable in court on an implied assumpsit, for money had and received in its sovereign capacity from another sovereign.
It seems to us to be equally impossible to hold the United States to be a trustee for any one when it receives a sum of' money from a foreign government, paid in pursuance of a treaty,, for the satisfaction of claims of American citizens against such government, unless the trust is declared and created by the-terms of the treaty or by an act of Congress. As between the-United States and an individual there can be no such thing as. an implied or constructive trust, irrespective of written law.
We do not mean to affirm that under no circumstances could the national government become an agent of or trustee for an individual; but that it cannot become such except by a law made conformably to the Constitution, either by the treaty-making or the legislative power. As no such law exists in regard to the money paid by Great Britain under the treaty of Washington, the United States cannot be considered as-either an agent or trustee for the claimant. So far from that, the United States never had any relation whatever to private-claimants against Great Britain, or to Great Britain, except" that of a sovereign state.
When those claimants invoked the aid of the national government in reference to their reclamations on Great Britain, they sought an exercise by that government of the sovereign-power through which alone this nation speaks to and acts upon other nations.
When the national government urged upon Great Britain the demands of American citizens on account of the depreda-' tions of the rebel cruisers, those demands became reclamations by the sovereignty of this nation against the British sovereign, and passed out of the region of mere private right into the-domain of international law, and out of the hands of the citizen into those of his government.
When they so passed, the authority of the national govern *218 ment over them became immovable and supreme, not only as between it and the citizen, but as between it and Great Britain. If not so, it was impossible for the United States to have treated honorably with Great Britain in regard to them; for it was ■Great Britain’s high and undoubted right to know that the United States had sovereign power, absolute and unimpeach-, •able, to do what they saw fit in regard to the claims which were the subject-matter of the treaty, and that there was nothing behind to impair or weaken that power.
When the United States appeared before the tribunal of arbitration created by the treaty, they appeared not as an agent advancing private claims, but as a sovereign seeking satisfaction of its own demands for injuries done to its subjects; and when the tribunal awarded $15,500,000 to be paid to the United States, it was to the United States as a sovereign, “for the •satisfaction of all the claims referred to the consideration of the tribunal”; and the United States received that sum, and gave •acquittance therefor, as a sovereign, and not otherwise. Thenceforth there existed no private claims of American citizens against Great Britain for the depredations of the rebel cruisers; they were all obliterated by the act of the United States as a sovereign, in demanding and receiving satisfaction therefor. Nor ■ were there, in law, any such claims against the United States. That sum was received by the United States in their sovereign -capacity, unmixed, in law, with any private right, and unaffected by any legal obligation to pay out any part of it to any ■ one. None of it could ever go out of the Treasury to any individual except “in consequence of appropriations made by law.” If private claimants sought access to it for the payment of their claims, they could obtain it only through an act of Congress; to which body alone it belonged to say whether any, and if any, what, descriptions of the claims “generically known as the ‘Alabama claims’” should ever be paid out of that money, and when, where, and how their payments should be authorized and provided for. No failure on the part of Congress to authorize payment of those claims, or any of them, could ever authorize judicial recourse against the United -States in this or any other court.
But, inasmuch as the money was paid for private claims, and was a gross sum paid for all such claims, without mention •of any individual one, there was a necessity for an official and *219 authoritative ascertainment of those which should be paid. It was the sovereign right of the United States, of their own volition, when and how they pleased, to provide, by law, for that ascertainment; and no such right could possibly exist elsewhere. From sovereign inaction or delay, from soveTeign partiality or even injustice in selecting the claims to be allowed, there was no appeal, except to the conscience and good will of Congress. It was to every intent a case where without'written law there could be no legal right.
The Congress, without unnecessary delay, met the wishes of those interested by passing, June 23, 1874, (18 Stat. L., part 3, p. 245, ch. 459,) an Act for the creation of the “Court of Commissioners of Alabama Claims,” “for the adjudication and disposition of the moneys received into the Treasury under the award of the tribunal' of arbitration by virtue of the * * * treaty aforesaid.” That court was revived and re-established .by the Act June 10, 1882, (22 Stat. L., 98, ch. 195,) and is now in existence. The claimant now seeking relief here has never appeared as a suitor in that tribunal, because its claim does not belong to any description of demands which those acts authorized to be presented there; and hence its appeal to this court to take cognizance of its claim under our general jurisdiction of “ all claims founded upon any contract, expressed or implied, with the government of the United States.” But we cannot entertain its appeal, for the plain and incontrovertible reason that the sovereign authority of the nation has created another tribunal for the investigation and adjudication of the “Alabama claims,” so far as that authority wills to have'them investigated and adjudicated; and by so doing has totally excluded from all other tribunals or authorities any right to take •official action upon the allowance of any claim on the money received by the United States under the treaty. It matters not that Congress did not open the door of that court wide enough to let this claimant in: that was for Congress to do •or not as it saw fit; and we are not here to sit as a court of appeals from the decision of that body, in a matter in which its power is supreme and we have noue at all.
The motion to dismiss the petition is sustained.
A like judgment was entered in the cases of Jacob E. Telfair, Receiver, John P. Paulison, Beeeiver, and the Sun Mutual Insurance Company.